UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARTHA B. HODEL,

      Plaintiff,

v.                                      Civil Action No. 2:07-0419

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

      Defendant

MEMORANDUM OPINION AND ORDER

      Pending are two motions for summary judgment, one filed by the plaintiff on March 11, 2008, and the other filed by the Prudential Insurance Company of America ("Prudential") on March 12, 2008.

I. Background

      Plaintiff began her employment with the Associated Press ("AP") in 1976 as a Huntington news reporter and correspondent.  In September of 1977, plaintiff was diagnosed with and treated for bipolar disorder.  She left AP in January 2005 on the ground that her bipolar disorder had become so debilitating that she could no longer function at her job.  As an AP employee, she was covered by a group long-term disability

insurance policy issued to AP by Prudential.  She filed a claim
for benefits under this plan in late April of 2005.  (A.R. 270-
77).

Her claim for benefits was denied by letter on July 18,
2005.  (A.R. 351-53).  In the letter, Prudential explained that
her claim was being denied because there was no medical evidence
to support an impairment demonstrating that she was unable to
perform her duties throughout the entire elimination period.
(A.R. 352).  Prudential further noted that her medical records
indicated that her condition was improving and that she appeared
to be stable prior to terminating her employment.  (Id.).

Plaintiff notified Prudential of her intention to
appeal the decision on November 28, 2005.  (A.R. 210).  In
support of her appeal, plaintiff provided Prudential with a July
11, 2006, report by Dr. Mark A. Hughes, her treating
psychiatrist, and a copy of a page from her medical records on
file in Dr. Hughes's office, as well as a July 18, 2006, report
of Dr. William Harris, plaintiff's treating primary care
physician, and numerous medical records on file in his office.
(A.R. 142, 204).

Prudential decided to uphold its decision and notified

the plaintiff by letter dated August 9, 2006.  (A.R. 338-42).  It reached this decision after reviewing its initial decision along with the additional documents supplied by the plaintiff on appeal.  (A.R. 339).  Prudential also considered the opinion of an external reviewing physician, hired by Prudential through Reed Review Services, to evaluate the plaintiff's disability by reviewing her medical records.  (Id.).

Plaintiff appealed again, notifying Prudential of her intention to do so by letter dated August 17, 2006. (A.R. 72). In support of her second appeal, plaintiff supplied Prudential with (1) a February 6, 2007, report of Dr. Hughes and records to support his report; (2) a February 1, 2007, report of Dr. Harris; and (3) a January 15, 2007, report of Ms. Sally F. Sowell, M.A., a licensed psychologist contracted by plaintiff's counsel to evaluate the plaintiff's disability. (A.R. 66-67).

In deciding the plaintiff's second appeal, Prudential considered the additional evidence submitted by the plaintiff. (A.R. 329).  Prudential also forwarded this evidence along with the rest of plaintiff's claim file to the external reviewing physician for the purpose of completing a second medical file review.  (A.R. 330).  Prudential again upheld its decision on this second appeal by letter dated March 26, 2007, wherein

3

Prudential advised the plaintiff that its decision was final and could not be further appealed to Prudential. (A.R. 327-32).

On April 5, 2007, the plaintiff requested further consideration of her claim in light of a March 30, 2007, award of social security benefits, which could not have been submitted earlier in support of her long term disability claim inasmuch as it was issued after Prudential's March 26, 2007 final decision. (A.R. 8-18). Prudential responded by letter dated April 18, 2007, and indicated that it determined that the social security decision did not change its prior decision to uphold its denial of the plaintiff's long term disability claim. (A.R. 321-22). Prudential observed that it was noted in the opinion of the administrative law judge that Dr. Robert Martin had performed a psychological consultative examination of the plaintiff on July 18, 2005, and that Ms. Sowell had performed a Mental Residual Functional Capacity Assessment of the plaintiff on February 16, 2007. (A.R. 321). This evidence had not been considered by Prudential at any point in its evaluation of the plaintiff's claim because Prudential was not provided with these medical records. (Id.). Prudential stated that its decision to uphold the denial of the plaintiff's claim for benefits remained unchanged inasmuch as the plaintiff had not provided Prudential

4

with any new medical data.  (Id.).  Prudential then reminded the
plaintiff that its March 26, 2007, decision was final.  (Id.).

Plaintiff instituted this action under the Employee
Retirement Income Security Act ("ERISA") on July 5, 2007.  (Id.
5, 327).

## II. The Applicable Standard of Review

The parties have agreed that, in light of the Fourth
Circuit's recent opinion in Woods v. Prudential Insurance Company
of America, 528 F.3d 320 (2008), wherein the court interpreted
policy language that was virtually identical to the language of
the policy at issue in this action, the appropriate standard of
review is the de novo standard of review.

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those
necessary to establish the elements of a party's cause of action.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
genuine issue of material fact exists if, in viewing the record

5

and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

III. The Propriety of Considering Evidence Outside of the Record

<u>Quesinberry v. Life Insurance Company of North America</u>, 987 F.2d 1017 (4th Cir. 1993), is the fundamental decision on the scope of evidence that a district court may consider when conducting a <u>de novo</u> review of an administrative decision under ERISA. Therein, the Fourth Circuit Court of Appeals articulated

6

the rule as follows:

> In summary, we conclude that courts conducting <u>de novo</u>
> review of ERISA benefits claims should review only the
> evidentiary record that was presented to the plan
> administrator or trustee except where the district
> court finds that additional evidence is necessary for
> resolution of the benefit claim.  Exceptional
> circumstances that may warrant an exercise of the
> court's discretion to allow additional evidence include
> the following: claims that require consideration of
> complex medical questions or issues regarding the
> credibility of medical experts; the availability of
> very limited administrative review procedures with
> little or no evidentiary record; the necessity of
> evidence regarding interpretation of the terms of the
> plan rather than specific historical facts; instances
> where the payor and the administrator are the same
> entity and the court is concerned about impartiality;
> claims which would have been insurance contract claims
> prior to ERISA; and circumstances in which there is
> additional evidence that the claimant could not have
> presented in the administrative process.  We do not
> intimate, however, that the introduction of new
> evidence is required in such cases.  A district court
> may well conclude that the case can be properly
> resolved on the administrative record without the need
> to put the parties to additional delay and expense.

<u>Quesinberry</u>, 987 F.2d at 1026-27.

The Fourth Circuit noted that its list of circumstances was not intended to be exhaustive, but rather merely a guide to district courts considering requests for the introduction of evidence outside the administrative record.  <u>Id.</u> at 1027.  The court instructed district courts, in deciding such requests, to consider why the evidence proffered was not submitted to the plan administrator.  <u>Id.</u>  By way of example, "[i]f the administrative

procedures do not allow for or permit the introduction of the evidence, then its admission may be warranted," and "[i]n contrast, if the evidence is cumulative of what was presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review, then its admission is not necessary." Id.

With these guiding principles in mind, the court considers the propriety of considering the additional evidence offered by each of the parties.  The plaintiff has asked the court to consider a performance appraisal of the plaintiff for the period of March 2, 1999, through August 28, 2000, along with an email sent to the plaintiff from her supervisor on August 23, 2004, both of which illustrate problems the plaintiff was having at work.  Specifically, the evidence shows that the plaintiff had trouble setting and meeting deadlines and with focus and follow-through, that she did not accept constructive criticism well, that her productivity was low, that she was increasingly absent from work, and that she routinely failed to file her daily planners and check in with the office.

Each of these documents was available to the plaintiff when she filed her claim and each of her appeals, and so they could have been submitted to the administrator for consideration.

8

Additionally, having reviewed the evidence on the record, the court concludes that this additional evidence is cumulative of the evidence presented to the administrator.  In Quesinberry, the Fourth Circuit cited with favor the Eighth Circuit's decision in Davidson v. Prudential Insurance Company, 953 F.2d 1093 (8th Cir. 1992), wherein the Eighth Circuit found that the district court had not abused its discretion in refusing to consider a vocational report that was never presented to the administrator where the administrator had reviewed the denial of benefits at least three times, there was an extensive record including five doctors' reports, and the sole issue before the court was whether the plaintiff was able to engage in gainful employment. Quesinberry, 987 F.2d at 1026 (citing Davidson, 953 F.2d at 1094-95).  Similarly, Prudential has reviewed the plaintiff's denial twice, there is an extensive record including at least seven reports produced by three different doctors and one licensed psychologist regarding the plaintiff's disability, and the only question to which the proffered additional evidence is relevant is whether the plaintiff was disabled under the terms of the policy.  Accordingly, the court declines to consider the performance appraisal and email.

Prudential has asked the court to consider a bulletin,

9

entitled "News and Views," in which Prudential describes a modification to the terms of the plan which became effective on January 1, 2005, mere days before the plaintiff's last day of work.  This evidence is supplied by Prudential to show that, although the plaintiff claims that she was entitled to three appeals, she was only entitled to two.  The court finds that this evidence may be relevant to its interpretation of the terms of the policy and may be necessary for the court to determine whether the plaintiff was given all of the administrative process she was due under the terms of the policy applicable to her. Accordingly, the court will consider Prudential's bulletin.

### IV. Evaluation of Prudential's Denial of Benefits

### A. Whether Prudential Denied the Plaintiff Adequate Process

The plaintiff challenges Prudential's denial of benefits in part on the ground that the plaintiff was not given a third opportunity to appeal Prudential's decision in violation of the terms of the summary plan description ("SPD").  According to the SPD that is a part of the administrative record:

> If the second appeal of your benefit claim is denied .
> . ., you or your authorized representative may make a
> third appeal of your denial in writing to the

10

> Prudential Appeals Committee within 180 days of the
> receipt of the written notice of denial.

(A.R. 445).[1]

As earlier noted, when Prudential notified the
plaintiff on March 26, 2007, that it was upholding its earlier
denial of her claim for benefits on its second reconsideration,
Prudential also notified the plaintiff that Prudential's decision
was final and could not be further appealed to Prudential.  (A.R.
327-32).  According to the letter, the plaintiff's only remaining
option for relief was filing a lawsuit under ERISA.  (A.R. 331).
On April 18, 2007, Prudential reiterated to the plaintiff that
its March 26, 2007, decision was final.  (A.R. 321).  The
plaintiff claims that she "was not given the opportunity for a
third appeal in which to submit additional information relating
to her claim as required [by the SPD]," and that had she "been
advised of her right to a third appeal, the additional evidence
discussed in the Social Security Decision would have been
submitted for consideration."  (Pl.'s Mem. Supp. Mot. 11; Pl.'s

---

[1] The court cites to the SPD rather than the plan because
the appeals process is described in the SPD but not the plan.
The terms of SPDs are accorded special weight by courts in
interpreting the terms of ERISA benefit plans.  See Pierce v.
Security Trust Life Ins. Co., 979 F.2d 23 (4th Cir. 1992).  Where
"there is a conflict between the summary plan description and the
terms of the policy, the summary plan description shall govern."
Id. at 28.

11

Response 6).

Prudential responds that the plaintiff was only entitled to two levels of appeal and that she was notified of these circumstances in each of the three denial letters sent by Prudential.  Prudential explains:

> Effective January 1, 2005, Prudential group life and disability claims operations switched from a three-step appeals process to a two step process for all long-term disability claims due to a change in the U.S. Department of Labor's requirement regarding the time period in which mandatory levels need to be completed. (Bulletin from Prudential to all Group Insurance Clients, attached [to Prudential's Reply] as Exhibit A, see pg. 1-2 [of Exhibit A]).  As a result of this requirement, Prudential's claim procedures were modified to allow for one mandatory appeal and to allow for one voluntary second level of appeal for any adverse decisions made on or after January 1, 2005.

(Def.'s Reply 8).  Prudential contends that inasmuch as the plaintiff did not apply for long term disability benefits until after January 1, 2005, and therefore the adverse decision on her claim was also provided after January 1, 2005, she was entitled to only two levels of appeal.  (Id.).

The language of the SPD that was provided to the court as a part of the administrative record is unambiguous.  Under the terms of the SPD, the plaintiff was entitled to three appeals. However, each of the denial letters sent to the plaintiff and the bulletin issued by Prudential indicate that there may have been a

12

change in the terms of the plan such that the plaintiff as of
January 1, 2005, may have become entitled to only two levels of
appeal.  Thus there is a question of material fact as to whether
the SPD that is a part of the administrative record is actually
the SPD that was in effect at the time the plaintiff filed her
claim for benefits.  There is also the companion question of
material fact as to whether the plaintiff was entitled to two or
three appeals.  Once these questions of fact are resolved, the
court can reach the further questions of whether the plaintiff
was given adequate notice of any plan modification as required by
29 U.S.C. § 1024(b)(1) or whether there was reliance or
prejudice.  See Pierce v. Security Trust Life Ins. Co., 979 F.2d
23 (4th Cir. 1992) (noting that a plaintiff must show reliance
and prejudice in addition to the failure of the fiduciary to
comply with the requirements of ERISA in order to recover for the
fiduciary's failure to comply); Rodriguez v. MEBA Pension Trust,
872 F.2d 69, 73-74 (4th Cir. 1989).

        The plaintiff also challenges Prudential's denial of
benefits on the ground that, according to the plaintiff, her
second appeal was not given independent review as required by the

13

terms of the SPD.[2]  She relies upon the terms of the SPD that
state:

> A full review of the information in the claim file and
> any new information submitted in support of the appeal
> will be conducted by the Prudential Appeals Review
> Unit.  The claim decision will be made by a member of
> the Prudential Claims Management Team.  The Prudential
> Appeals Review Unit and Claims Management Team members
> are made up of individuals not involved in the initial
> benefit determination.

(A.R. 444).  The plaintiff contends that because Prudential
relied upon the opinion of Dr. Goldman in considering the
plaintiff's first appeal, Prudential violated this provision of
the policy by referring the case to Dr. Goldman on the occasion
of the second appeal for a second opinion by him, which was given
on March 6, 2007.  (Pl.'s Mem. Supp. Mot. 12; Pl.'s Response 5).

The court finds that this provision of the SPD is
unambiguous and that the plaintiff misreads its requirements.
The provision on which the plaintiff relies merely requires that
the Prudential Appeals Review Unit and Claims Management Team
members -- the Prudential employees who review the information in
the claim file and any new information submitted in support of
the appeal and who decide the plaintiff's appeal -- consist of

_____

[2] Neither party contends that the language of the SPD that
is relevant to this issue has changed.  Accordingly, the court
proceeds on the interpretation of the SPD language as it appears
in the SPD that is a part of the administrative record.

14

individuals who were not involved in the initial benefit determination.  Dr. Goldman is an independent reviewer who was not involved in the initial determination.  Rather he was contracted by Prudential through Reed Review Services to review the plaintiff's medical records and render a medical opinion on the first appeal and again on the second appeal.  (A.R. 23, 76). Although his medical opinion was considered by Prudential in making its determination of the plaintiff's appeals, he, personally, was not the decisionmaker and was not involved in either determination on appeal.  Prudential did not deprive the plaintiff of her right to an independent second review by asking Dr. Goldman to render a second opinion.

B. Whether the Plaintiff was Entitled to Benefits

Presuming, without deciding, that the plaintiff was entitled to only two appeals and thus has been permitted to fully exhaust her administrative remedies, the court proceeds to review Prudential's benefits determination.  The court notes, however, that should it later be determined that the plaintiff was entitled to three appeals, the following analysis will be irrelevant.

15

The policy provides in pertinent part as follows:

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

(A.R. 419). A "sickness" is "any disorder of your body or mind;" "injury means a bodily injury that is the direct result of an accident and not related to any other cause." (Id.). "Material and substantial duties" are duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

(Id.). A "regular occupation" is "the occupation you are routinely performing when your disability begins." (Id.). According to the plan, Prudential looks at the employee's occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.  (Id.).[3]

---

[3] The court notes that neither party contends that the definition of a disability has changed. The parties appear to agree on the applicable policy language.

16

Accordingly, to qualify for disability benefits under Prudential's policy, the plaintiff must submit evidence that shows that she was unable to perform the duties that are normally required in the course of performing the job she was performing at the time her disability began or that she was unable to perform duties that cannot be reasonably omitted or modified from the performance of that job.  According to the job description for the plaintiff's position, her job duties were as follows:

> The Huntington correspondent covers spot news and enterprise mainly in southern West Virginia, a geologically rugged region which includes much of the state's coal mining industry.  The correspondent is responsible for aggressive and imaginative pursuit of spot and enterprise stories, solid reporting and lively writing, concentrating on issues of national and regional importance.  Areas of interest include local and federal courts, Marshall University, business and especially the environment.  Some knowledge and coverage of sports is required.  Identifies and cultivates sources; works closely with editors to develop stories; coordinates photo coverage.  Travel is required.

(A.R. 309).  According to the Department of Labor's Dictionary of Occupational Titles, the material duties of her job include:

> collecting and analyzing information about newsworthy events to write news stories for publication or broadcast.  In performing this occupation's material and substantial duties a person would generally be required to exert force to lift/carry, push/pull objects 20 pounds occasionally or up to 10 pounds frequently, or negligible amount constantly.  The individual may have need to walk or stand frequently throughout the work day, and have frequent use of upper

17

extremities for reaching, handling, or fingering items.
(A.R. 282).

The administrative record is replete with medical
evidence, some of which tends to show that the plaintiff may have
been unable to perform the duties that were normally required for
the performance of her regular occupation, and some of which
shows that she was not unable to perform these duties and thus
was not disabled under the terms of the policy.  The evidence
which tends to show that she was disabled comes from the files
and reports of Dr. Harris, the plaintiff's treating primary care
physician; Dr. Hughes, the plaintiff's treating psychiatrist; and
Ms. Sally F. Sowell, M.A., a licensed psychologist who was hired
by plaintiff's counsel for the purpose of appealing Prudential's
August 9, 2006, denial.  A summary of this evidence follows.

Dr. Harris's notes primarily concern the plaintiff's
physical health, but contain a few notes about her bipolar
disorder.  Dr. Harris's notes state relevantly as follow:

- December 27, 2004 - "She is still seeing Dr. Hughes for
  bipolar depression. . . .  She is to explore possible
  total disability because of her inability to
  satisfactorily perform a job in a consistent manner."
  (A.R. 232).
- March 30, 2005 - "Has been off work since 1/9.  Is
  trying for disability."  (A.R. 231).

The notes of Dr. Hughes, the plaintiff's treating

18

psychiatrist, indicate pertinently as follows:

- March 1, 2004 - "Pt states she is feeling hypomanic. States she is easily distracted @ work . . . mild speech delay . . . still scattered. (A.R. 227).
- June 1, 2004 - "much better . . . mild speech delay." (A.R. 226).
- August 18, 2004 - "Hypomanic - job is stressful . . . got into a verbal confrontation [with] someone she was interviewing in June. . . . mildly disorganized, tearful [with] minimal provocation, 1st time I have seen her in 6 years become effectively unstable." (A.R. 225).
- August 7, 2004 - "speech rapid but not pressured, mood . . depressed, affect remains labile but improved since last visit." (A.R. 224).
- October 7, 2004 - "Pts mood has improved, Still easily flustered - problems at work are less - still tense, mood is more stable . . . slight articulation delay . . . . Doing ok - things have settled down - doing better." (A.R. 223).
- December 29, 2004 - "Pts BP ok . . . considering disability as things @ work are not going well. Has been off work [since] Dec. 4th. . . . Lamictal helpful but still sees work as a major stressor . . . doing ok." (A.R. 222).
- March 15, 2005 - "She is not working - wt down "more active . . . . Happy that she is not working. Mood is much improved - less labile." (A.R. 221).
- June 14, 2005 - "Still mildly disjointed thoughts . . . speech impediment unchanged. . . . doing ok." (A.R. 220).

In July of 2006, Dr. Hughes wrote a letter in support of the plaintiff's claim for disability benefits in which he stated that the plaintiff was "not stable enough to engage in any work because of psychiatric impairment" and had been disabled with bipolar disorder and Adult Attention Deficit Disorder ("ADD") since January 10, 2005. (A.R. 202). Specifically, he

19

notes that:

> She has outbursts of inappropriate anger and
> belligerence with others at work and elsewhere.  She
> has serious difficulty completing tasks at home and at
> work.  She is very easily distracted.  She has problems
> concentrating and has serious issues with
> decompensation and to the point where she cannot
> function outside the home for periods of time.
>
> Her medications help but make her dizzy and sleepy on
> occasion.  Ms. Hodel, as a result of her psychiatric
> condition, has mania and depression and takes potent
> medication which must be adjusted at times.

(<u>Id.</u>).

Around the same time, Dr. Harris wrote a letter stating
that "[w]ithout a doubt, the combination of Ms. Hodel's bipolar
disorder and the side effects of her medications make it
impossible for her to complete everyday tasks or perform duties
required in the work field." (A.R. 88).  He explained that her
condition created problems with concentration, panic attacks,
periods of crying, inability to complete work assignments and
agitation which sometimes causes her to have emotional outbursts
and become belligerent with co-workers and family members.
(<u>Id.</u>).  According to Dr. Harris, any type of stress on the
plaintiff could trigger an emotional outburst or breakdown,
leaving her unable to perform functions within her home or in any
type of work environment.  (<u>Id.</u>).  He noted that as of July 18,
2006, the plaintiff was taking the following medications: Paxil,

Strattera, Lamictal, Ambien, Crestor, Lozol, Diovan, Voltaren,

Tenex, Flexeril, and Antivert.  (Id.).  He further noted that the

side effects of these medications included: dizziness, vertigo,

fatigue, drowsiness, sluggishness, trembling of the hands,

nausea, muscle pain, headaches, nervousness, numbness, and

various other problems.  (Id.).

On January 15, 2007, the plaintiff underwent a

psychological evaluation by Ms. Sally F. Sowell, M.A., who was

hired by plaintiff's counsel for the purpose of appealing

Prudential's August 9, 2006, denial.  (A.R. 61, 66-67).  Ms.

Sowell administered a clinical interview, mental status

examination, Personality Assessment Inventory, Beck Depression

Inventory, and Beck Anxiety Inventory.  (A.R. 61).  In her

report, Ms. Sowell diagnosed the plaintiff with bipolar disorder

and attention deficit hyperactivity disorder and stated:

> The diagnosis of Bipolar Disorder most recent episode
> mixed, moderate is given because Ms. Hodel reported
> mood swings ranging from depressed to manic.  She
> reported depressed mood with insomnia, fatigue,
> feelings of inappropriate guilt, poor concentration,
> and history of suicidal ideation.  She reported
> irritable and elevated mood with grandiosity, decreased
> need for sleep, pressured speech, racing thoughts,
> distractibility, increased goal directed activity, and
> excessive spending.
>
> The diagnosis of Attention deficit hyperactivity
> disorder combined type is given because the claimant
> reported difficulty sustaining attention, difficulty

21

>organizing tasks, difficulty completing tasks,
>frequently being distracted by extraneous stimuli, and
>often forgetful in daily activities.  She fidgeted and
>squirmed in her seat during the interview and talked
>excessively.  She reported a history of impulsive
>behaviors.  According to her medical records, Dr.
>Hughes has prescribed Strattera, which is usually
>prescribed for Attention deficit hyperactivity
>disorder.

(A.R. 64-65).

Dr. Harris again wrote in support of the plaintiff's

disability benefits application on February 1, 2007.  (A.R. 59-

60).  In his letter, he reiterated his earlier conclusion that

the plaintiff was disabled by her bipolar disorder and noted that

Ms. Sowell's report further supported his findings.  (Id.).

Dr. Hughes also wrote a second letter in support of the

plaintiff's disability benefits claim.  (A.R. 29-30).  Therein,

he states that during his treatment of the plaintiff, her

medication has had to be increased and that no stable dosage has

ever been reached.  (A.R. 29).  He also states:

>She has some visits when she is doing relatively okay
>but for the most part has problems which do not
>resolve.  She frequently has to stay at home and avoid
>people.  She has anxiety and agitation which waxes and
>wanes.  She gets into fights with people, can be very
>argumentative, loses her temper with minimal
>provocation, cries easily, and has speech articulation
>delay.  She also has problems with concentration and
>memory.
>
>Ms. Hodel has not worked since January of 2005.  She

22

still has problems relating to her bipolar disorder
which are very serious and preclude her from working.
Her ability to maintain attention for extended periods,
perform at a consistent pace, accept instructions and
respond appropriately to criticism from supervisors is
extremely limited.  She would also have great
difficulty completing a normal work week without
interruption from her psychological symptoms.  She
clearly was and is unable to work in her field as a
reporter or any other field because of all of these
problems associated with bipolar disorder and the
stress which occurs in dealing with activities of daily
living.

(A.R. 29-30).

As earlier noted, the administrative record also
includes evidence that tends to show that the plaintiff was not
unable to perform the duties that were required for the
performance of her regular occupation and thus was not disabled
under the terms the policy.  This evidence primarily derives
from the reports of Dr. Marcus Goldman, who was hired by
Prudential to review the plaintiff's medical records and render a
report containing his medical opinion.  A summary of this
evidence follows.

In August of 2006, Dr. Goldman found that the
plaintiff's diagnoses of Bipolar disorder and ADD were
inadequately supported by her medical records.  (A.R. 76-79).
Specifically, he found that the notes of Drs. Hughes and Harris
were cursory and contained no compelling mental status

23

examination findings consistent with acuity, severity, or debility.  (A.R. 78).  He also noted that the reports of belligerence were not observed in session, nor was she observed to be manic in session, and all of the data with respect to these symptoms appeared to have been self reported.  (A.R. 78-79).  He observed that the plaintiff was not being seen with a frequency consistent with psychiatric severity or acuity, was apparently not in therapy, and had no comprehensive treatment goals or plans.  (A.R. 79).

On March 6, 2007, Dr. Goldman evaluated the plaintiff's records a second time in light of the additional letters sent by Drs. Harris and Hughes and the evaluation performed by Ms. Sowell.  (A.R. 24-28).  He concluded:

> Contrary to Dr. Harris' assessment, Ms. Sowell's report did not support an incapacitating illness.  Indeed, the mental status examination revealed no mania, psychosis, suicidal ideation/homicidal ideation, or cognitive impairment.  Despite the results of the PAI, indicating active psychosis and confusion, there were no such findings on the mental status evaluation.  Furthermore, it would appear that the PAI was possibly invalid, with the claimant endorsing bizarre symptoms, in excess of her presentation; she was not actively psychotic, not confused, not cognitively impaired.  She apparently has not required psychiatric inpatient hospitalization. There are no therapy notes.  She has been on varying doses of the same medication, Paxil, since the 1990's. Much of these data, in reviewing the record, continue to be self reported.  For example, Ms. Sowell gave diagnoses of Bipolar Disorder and ADHD based on the claimant's self reported symptoms.

24

(A.R. 27).  Based upon his review of the medical records, he concluded that the new information provided by Drs. Harris and Hughes and Ms. Sowell did not alter his earlier assessment. (A.R. 27).

In the pending motions for summary judgment, the parties' briefing focuses primarily on the appropriate weight to be accorded the circumstances, medical notes, and reports described above.  Prudential contends that the evidence suggests that the plaintiff's condition was improving and that the plaintiff appeared to be stable at the time she filed her claim for disability benefits.  Prudential also asserts, as noted by Dr. Goldman in his review of the plaintiff's medical records, that the evidence supporting the plaintiff's claim of disability is primarily subjective and self-reported rather than objective medical observations made by the doctors during exams or treatment sessions with the plaintiff.

The plaintiff contends that Prudential's decision was based primarily on the opinion of Dr. Goldman, and that Dr. Goldman's opinion, standing alone, is insufficient to overcome the opinions of the plaintiff's treating physicians.  The plaintiff also criticizes Dr. Goldman's report as summarily dismissive of the opinions of the plaintiff's treating

25

physicians.

Prudential defends Dr. Goldman's report as being based upon the medical evidence of record.  Both parties accuse the other of citing and quoting portions of the record that are favorable to their position, while intentionally failing to note other portions of the record that are inconsistent therewith.

Two of the parties' arguments require some additional attention.  The parties dispute the appropriate weight to be accorded the opinions of the treating physicians versus the opinions of Dr. Goldman, who reviewed only the plaintiff's medical records and never observed the plaintiff in person.  The plaintiff contends that the opinion of Dr. Goldman is insufficient to overcome the opinions of the plaintiff's treating physicians and Ms. Sowell, each of whom personally observed the plaintiff.  While the plaintiff notes that in <u>Elliott v. Sara Lee Corporation</u>, 190 F.3d 601, 607-08 (4th Cir. 1999), the Fourth Circuit declined to adopt the "treating physician rule" which is applied in social security disability cases, the plaintiff contends that the Fourth Circuit did not do so in <u>Elliott</u> because in that case there was persuasive evidence contradicting the treating physician's opinion.  This argument is precluded by the United States Supreme Court's opinion in <u>Black & Decker</u>

Disability Plan v. Nord, 538 U.S. 822, 825 (2003), wherein the court held that "plan administrators are not obliged to accord special deference to the opinions of treating physicians."  While the Supreme Court noted that plan administrators cannot arbitrarily refuse to credit a claimant's reliable evidence, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  Id. at 834.

Additionally, the plaintiff contends that Prudential, in relying primarily on the opinions of Dr. Goldman, failed to actually consider whether the plaintiff's condition prevented her from performing the duties that were required for the performance of her regular occupation.  According to the plaintiff, Dr. Goldman "short circuited the process by finding that she had no impairment whatsoever."  The plaintiff misreads the policy's requirements for finding the existence of a disability.  Under the terms of the policy, a person is disabled if she is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury."  (A.R. 419 (emphasis added)).  "Sickness" and "injury" are defined terms.  (Id.).  If a claimant has no sickness or injury, Prudential need not consider whether the claimant is able to perform her job duties.

27

After reviewing _de_ _novo_ the evidence contained in the administrative record and each of the administrative denials of the plaintiff's claim for benefits, the court concludes that there is a question of material fact concerning whether the plaintiff due to sickness or injury was unable to perform the duties that were normally required for the performance of her regular occupation.  As earlier noted, a court considering a motion for summary judgment must neither resolve disputed facts nor weigh the evidence, Russell, 65 F.3d at 1239, nor make determinations of credibility.  Sosebee, 797 F.2d at 182.  Based upon the evidence described above, a reasonable fact finder could find for either party on the question of whether the plaintiff was disabled as that term is defined in the policy.  Summary judgment is thus not proper.[4]

---

[4] Prudential further seeks summary judgment on the ground that even if the plaintiff were found to be disabled, she would only be entitled to twenty-four months of payments under the terms of the plan limiting benefits for participants whose disability qualifies as a mental illness.  Inasmuch as the plaintiff concedes that she has no physical disability and is entitled to only twenty-four months of payments, summary judgment is proper on this limited issue.

V. Conclusion


Accordingly, it is ORDERED that the plaintiff's motion for summary judgment be, and it hereby is, denied.  It is further ORDERED that Prudential's motion for summary judgment be, and it hereby is, granted to the limited extent that it seeks summary judgment on the ground that the plaintiff suffered no physical disability and, consequently, would only be entitled to twenty-four months of payments; and it is otherwise denied.


The Clerk is directed to forward copies of this written opinion and order to all counsel of record.


DATED:  March 30, 2009


John T. Copenhaver, Jr.
United States District Judge

29